Case number 19-3280, Western Missouri, T.S.H. et al. v. Clarence Green et al. All right, Mr. Rauch, we'll hear from you first. Thank you, Your Honor, and may it please the Court. This case calls for the straightforward application of consistent precedent from this Court and from the Supreme Court on the clearly established prong of the Qualified Immunity Inquiry. That precedent, of course, requires either controlling authority or a robust consensus of persuasive authority particularized to the facts of the case, demonstrating that the allegations constitute a constitutional violation. The District Court here did not cite any substantive authority in its opinion, much less authority particularized to this case, nor have appellees either in this Court or in the District Court. And the absence of that authority is indicative of how appropriate qualified immunity is in this case. The doctrine provides state actors, here police officers, the ability to effectively respond and react to unique circumstances that arise in the line of duty. Here, two specific circumstances remove this case from anything remotely particularized to relevant case law. First, there is no allegation that either officer ever interacted with either appellee, yet it is asserted that the officers individually improperly seized them and violated their rights. Second, appellees were high school students under the supervision of high school personnel attending a football camp at the university at the time of this incident. The relevant albeit factually dissimilar case law that does exist supports the officer's actions here. Not only does that fact demonstrate that the violation alleged cannot be clearly established, it also shows that if this Court elects to analyze the other prong of the qualified immunity analysis, the allegations do not plead a constitutional violation. On your first point, that the officers didn't interact, as I understand the allegations of the complaint and appellant's position, is that the high school coach was acting under the direction and control of the officers. And he was in essence their agent. And to the point that they were even consulting with, he, the coach, was consulting with the officers during the interrogation. So does it make that much difference that they didn't have face-to-face contact if they were directing the coach on how to do it, what to do, when to do it, and so on and so forth? I appreciate the question, Judge Malloy. And I think we start from the premise that whether there is any case discussing that sort of circumstance, where whether or not someone can be seized via an agent that is directed by other officers. And I don't think there's any case law establishing that circumstance. Of course, we have to take all of the allegations in the complaint as true, and we certainly do so. But I don't think that, it does say that they directed them to question the individuals. I think that some of the allegations that are used, that they were under their quote-unquote control, border on legal conclusions as opposed to factual allegations. So I think that's another factor that this court has to consider. Well, are you sure there's even an allegation of control? I believe, and I'll pull the complaint. My understanding is there's an allegation of direction and instruction. But query whether there is even a plausible allegation that... I believe that the phrase, and I'm looking at the complaint, I believe that the phrasing that is used in the complaint is consistent with the instructions. So, whatever that... That's another question I have maybe from Ms. Winningham. A lot of things can be consistent with without being compelled. Right. But even if we accept that they were instructed by the police, is there a plausible allegation that they were, that the coach was, you know, acting... That he was not free to decline? I don't believe that. That he was somehow compelled under color of law to do these things as opposed to choosing to do them? Right. I don't believe that that allegation is in the complaint, Your Honor. And I also think this is probably an appropriate time to raise as well that the role of them as high school students being questioned by a high school supervisor is significant in this respect as well. Of course, the Supreme Court recognized in TLO that there is a different constitutional standard that applies when that is the circumstance. And certainly here, appellees do contest that this is a different circumstance, again, because of the instructions that were given. But in that circumstance, the Supreme Court declined to announce what the appropriate constitutional standard would be. And in fact, this court just last year in KWP analyzed this issue and similarly declined to weigh in on a circuit split that exists as to what the appropriate constitutional standard is in that circumstance. But doesn't it at a minimum have to be reasonable, though? Yes. So that's understood, correct? That's correct, Your Honor. And I grabbed it because I want to make sure I correctly articulate the test from TLO is that you consider whether the action was justified at its inception and whether the search was reasonably related in scope to the circumstances. And so, yes, at a bare minimum, that's the test that would apply. And here, if you look at the circumstances, you had a report from a female cheerleading coach that was staying in an adjacent dormitory, that she saw individuals observing her while she was changing clothes. She said that she saw a phone that may have been used to take pictures. When confronted with that set of facts, it's simply implausible that the constitutional standard is that the officer should have evaluated that and done nothing. Here, they instructed a football coach to inquire as to what happened and whether a picture was taken. And I don't think under any constitutional standard, be it the one that was announced in TLO or the heightened standard of objective reasonableness from Graham versus Connor, which would be the other alternative, that that can constitute unreasonable action given the nature of the allegations that were reported to the police officers and their ability to react within the bounds of the law to those allegations. But the allegation is a detention for a number of hours, correct? Yes. So it's not just simply following up, as you've suggested. The allegation is that these young people were detained, not permitted to leave until, I don't know, somebody admitted to doing something and that they were forced to at least show what was on their phone. So that's more than just following up, isn't it? That's correct. If I may comment on a couple of things that were posited in the question, it is alleged that this occurred over a number of hours. Although I do think that when we get to they were not, quote, free to leave and were, quote, detained, I believe that those are legal determination. And this court has articulated the framework as to whether someone is seized or not in United States versus Flores-Sandoval and in other cases, discussing that that is an objective test and articulating the factors that are to be used to determine whether a seizure has occurred or not. Well, but is there not a factual allegation? I mean, independent of sort of an official seizure, not free to leave under some sort of authority of a law enforcement. But do you not think that there's an allegation of just sort of factually they were told they couldn't go, that they had to stay there? I think the allegation says that they were not free to leave. That's the phrasing that is used. And so I guess ultimately the question has to be whether or not factually they were, quote, unquote, free to leave. It's whatever the circumstances are that are alleged. Does that ultimately constitute a Fourth Amendment violation? I guess is the point that I was trying to make. And if the allegations all taken as true, free to leave or not, do not rise to the level of the Fourth Amendment violation, then qualified immunity is most certainly appropriate. Is it accurate that they were ordered to show things from their phone or was it just alleged that they were required to reveal information about? The allegation is that they were required, they were requested to reveal information about what was on their cell phones. I don't believe there is ever an allegation that any sort of a search of the phones themselves occurred. So I believe that the only Fourth Amendment violation that is at issue is whether there was a seizure or not. And certainly our position that would be would be that the unclear nature of the case law and what the constitutional standard is in the first place applying in this circumstance, not to mention the fact that it was supposedly done through an agent without any case law demonstrating that that is even possible for purposes of a Fourth Amendment seizure makes this case fall into the category of those that are entitled to qualified immunity by virtue at least of the fact that they are not clearly established. I want to move on very briefly to the other two claims that were raised or at least the other two theories of a 1983 violation. The first was this notification claim out of the Federal Juvenile Delinquency Act. That act on its face, the terms that are used in the statute and also the title of the statute makes clear that it applies only in circumstances where juveniles are arrested and taken into custody and the case law establishes that it only applies to federal crimes when individuals are taken into custody or arrested. Of course, that is not alleged here. So that claim would fail for that purpose and is certainly not clearly established on that basis as well. Finally, Applees asserted a constitutional privacy claim to the extent that that claim was ever recognized as one that could surpass qualified immunity. That can't be the case after the en banc decision in Dillard v. O'Kelley. I don't believe that it appears to us anyway that in the opposition brief, and I'm sure my friend will correct me if we're wrong about this, that now that claim focuses solely on another provision of the Federal Juvenile Delinquency Act and not on the Constitution. If that is the case as well, it's the same analysis that you would have for the notification claim. Finally, the conspiracy claim is simply derivative of the principle 1983 claims and it should be dismissed for the same reason as well. If there are any further questions at this time, I'm happy to address them. Otherwise, I'll reserve the balance of my time for rebuttal. Very well, thank you for your argument. Ms. Winningham, we'll hear from you. May it please the court, Jamie Winningham for the appellees. The district court in this case accurately found that qualified immunity did not apply to plaintiff's claims as alleged in the amended complaint. The two-prong test for qualified immunity is found in the Harlow case and it states that, at first we must examine whether or not a constitutional or statutory violation should be alleged and whether or not that's been clearly established at the time of the conduct. Appellants in this case have based most of their appeal on the fact that there's no particular case that was cited by the district court making this a clearly established right. And that is not what was consistent with this court's holdings and it's not what's required. It necessarily requires an examination of the notice that the officer had at the time in combination with the particular situation that the officer was in. Immunity is not given to a police misconduct that's outrageous and it's obviously unconstitutional. It does not require a specific case that's happened exactly as this one does. Do you have any case that you think is in the neighborhood that says that a police officer is liable for instructing a school official to question and detain some students? The case that offers the best guidance for that is a TLO case and that's a case that involves a school's investigation of a student. And in that case, the court specifically laid out that this is the analysis when a school is the one that initiates the investigation and performs the investigation. The court also specifically states that this would be a different issue if this investigation was conducted by an officer and initiated by an officer. This is the exact situation that TLO said, we don't apply this standard if the investigation is initiated by an officer. Therefore, the regular standard for the Fourth Amendment is applied to this situation. And so there are an abundance of cases establishing that the Fourth Amendment prohibits confinement for several hours while waiting for a confession to a crime without a horrible cause. I wonder whether TLO was referring to an investigation that was actually conducted by officers, initiated and conducted by officers. In other words, the officers search or seize. So TLO, yeah, the investigation was done by a principal after a student was caught smoking and so... I know, but you're referring to what they reserved. You said they said, we don't say whether these standards apply if law enforcement had initiated it, conducted. But law enforcement didn't seize anyone in this case. So I'm just questioning whether that caveat in TLO is on point. There's another case under SHADE, which is a case that the school contacts law enforcement and asks them to help them carry out an investigation. And in that case as well, the court says, this was initiated by the school, even though it was performed by an officer. So it's the school's concern with the safety of the students that makes this have that relaxed standard for the Fourth Amendment. In this case, there is no school that's initiating this investigation. It's purely the officers initiating the investigation and using the school to conduct the investigation. I was going to ask you about SHADE. And to me, it almost works the opposite. That SHADE is a case where there was joint involvement of the school officials and law enforcement. And admittedly, the school instigated the investigation. But to me, that makes it questionable whether the law is clearly established that an officer can't be involved in an investigation of this kind. In SHADE, there is also an underlying school policy, a large school concern for safety of students because it was concerning a knife that was alleged that a student had. And so the school's got a very important interest to keep the rest of its students safe. And that's not the underlying concern that's in the case here. The investigation was clearly for a crime. It could have been a felony that these juveniles would have been charged with. It was not an investigation that involved any type of school interest for safety or school policy at hand. Let me ask you a question your opposing counsel brought up. He said that the only claim, at least in the first two counts, is unconstitutional seizure of the person. Is he correct? As I read your complaint, you don't seem to be alleging that there was a seizure of their cell phones. You're not alleging that, is that correct? That's correct. Okay. And that was done voluntarily, as I understand it. The seizure of the juveniles? No, the phones. As I understand it, the way you phrased paragraph 58 of your complaint, you say they revealed information. So I'm taking that to mean that they volunteered their phones and said, look at my phone, I don't have a picture, or something of that nature. Well, our allegations would be that they're confined to this room for several hours and told, you know, what's on your phone. At that point, it's not voluntary that they're going to show us on their phone. They feel like they can't leave this room until they've proven their innocence. So there's not... I wouldn't say that we agree that it was a voluntary search. It was definitely a search. I don't know that it was a seizure because they didn't give up their phones to the officers or the coaches. So going back to the shade case, assuming for the sake of the question that the TLO standard does apply here, would you concede that a reasonable official could have believed that the TLO standard, at least, was satisfied on these facts? Based on the TLO case, no, because I think the TLO case specifically said that the school is the one that initiated this investigation. And in our case, the law enforcement officers are initiating investigation for a criminal purpose. No, I understand your point there. I was trying to assume for purposes of analysis, though, that the TLO standard applies, even though you say this was initiated by law enforcement. Assuming that the TLO standard applies, would you agree that a reasonable official could have believed that there was sufficient grounds to conduct the investigation? No, I do not. Even with a relaxed standard, I don't believe that the conduct of the officers was reasonable under even the TLO relaxed standard because these juveniles were confined to a dorm room for several hours. There's no case law that would establish that that is not outrageous. Any officer, even with a relaxed standard, would know that that is not what's permitted under the Fourth Amendment. You may proceed. Proceeding to the other constitutional violations that have been alleged, plaintiffs have also alleged a violation of their Fourteenth Amendment rights for due process. Juveniles are given an extra protection under specific statutes, specifically stating that when they are in custody, they've got to be advised of their rights immediately, the attorney general has got to be notified immediately, the parents of the juveniles must be notified immediately, and of the nature of the crime that's alleged against them. This is a very specific statute that would have given these officers reasonable notice of what was required of them, and none of those requirements were completed. Additionally, under their rights to privacy, there's another juvenile statute that offers additional protections to juveniles that their names cannot be printed in public reports such as police reports. These officers were aware... Why does this statute apply here? Because the statute applies to public disclosure of a juvenile's name unless... When a criminal investigation is made, unless he is prosecuted as an adult. It's very clear that the officers here were investigating for commission of a crime, therefore that right of privacy in that statute does apply. Having their names in this police report is specifically what the statute is entailed to prevent. Does there have to be a juvenile delinquency proceeding for the statute to apply? I believe that the statute... For investigation of a juvenile delinquency proceeding, I think the statute would still apply, otherwise it would defeat the purpose of that statute if you're not applying it to investigations for juvenile delinquency as well. So are you saying that if a police officer in Cedar Rapids, Iowa is investigating a juvenile, that they have to comply with the statute? I think it's for a Missouri crime. It would apply in Missouri. But this is a federal statute, right? Well, so if they were found guilty of this crime, then they could have been charged with a Missouri crime or a federal crime. But so you... So how do you bring this federal statute into this Missouri case, I guess is what I'm trying to say. Because it establishes that this was clearly established as a statutory right of these juveniles. Well, how do they... That's my point. How do they have a statutory right if you're investigating a Missouri juvenile... If you're Missouri officials investigating juveniles in Missouri for a violation of Missouri statute, why does the federal statute apply? Because it's still a juvenile delinquency matter. So you're saying nationwide, every time any juvenile in any state is being investigated for any state crime, they have to comply with the statute? When they're conducting or making police reports, yes. I think the statute would prohibit the publication of their names in an investigatory report. Even though it's a state official? Yes. And you have a case that says that? No. That a law enforcement officer would be on notice that they're subject to this... You're talking about two different federal statutes. One that says the Attorney General of the United States has to be notified every time a juvenile is arrested anywhere in the United States, as I understand your argument. Right. And that there's privacy... So you're saying any juvenile arrested for any crime, any place in the United States, the Attorney General of the United States has to be advised? When they're being investigated for a federal crime, yes. I'm more concerned with the fact that it's clearly established that juveniles... They have to contact their parents and advise them, hey, they're in custody, they're being investigated for this crime. And that just simply didn't happen here. I think if that's all the questions, thank you for your time. Thank you for your argument. Would you please mute your phone? We were getting... Mute your microphone, because we were getting some feedback when Mr. Raup was speaking, really. Thank you. Mr. Raup, we'll hear from you in rebuttal. Thank you, Your Honor. I think the colloquy with both counsel today illustrates that it is a unique circumstance that we're dealing with, and it is unclear what constitutional standard would apply and, you know, the law is not clearly established based on TLO alone. The Supreme Court specifically said it was not addressing the question. Then this court just last year in KWP said that there's a circuit split on what the appropriate constitutional standard is and declined to get itself involved in that circuit split at this point. So the law is simply not clearly established on what... Your Honor, assuming the TLO standard does apply, which I think is your position, that that's the most that should apply, right? That's correct, Your Honor. I mean, we would say that it's constitutional under either standard, but yes, I believe that TLO would be the appropriate standard. Okay, could you address whether a reasonable officer could have believed that the actions here complied with the TLO standard? Yes, I believe they do, and I think if you look at the sentence following the Supreme Court's announcement of what the two-part test is, the court says that under ordinary circumstances, a search of a student by a teacher or other school official, so again, assuming that this would apply in the law enforcement context as well, will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school, and so I think if you look at the context that was applying there, it's very apparent that based on the allegations that the police received in this circumstance that they reacted reasonably to that, and the contention that the fact that this lasted for several hours is somehow in and of itself a constitutional violation, I think is rebutted by the case law that we cited in our brief that showed numerous examples of questioning by school officials for periods of hours that are held to not violate the Constitution. Simply put, there is no case law here to establish that it was a clearly established violation, and that should be the end of the matter. All right. Your time has expired. Thank you for your argument. Thank you, Ms. Winningham. We appreciate both counsel presenting their cases. The case is submitted, and the court will file an opinion in due course.